## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**LUPE TORRES**, individually and as
personal representative of the estate of
**ANTONIO TORRES**, deceased, and as
mother and next friend of **CHARLES
TORRES**, **RACHAEL TORRES**, and
**STEPHANIE TORRES**, minor children,

       Plaintiffs,

      vs.                           No. CIV 05-606 MCA/KBM

**NEW MEXICO OFFICE OF THE
MEDICAL INVESTIGATOR**,
**ROSS E. ZUMWALT, M.D.,**
**CHIEF MEDICAL EXAMINER**,
in his official capacity, **ASPEN
FUNERAL ALTERNATIVES**,
**FRENCH MORTUARY**,
**NEW MEXICO DONOR SERVICES**
and **DCI DONOR SERVICES, INC.**,
a foreign nonprofit corporation,

       Defendants.


## MEMORANDUM OPINION AND ORDER

     **THIS MATTER** comes before the Court on *Defendants New Mexico Office of the
Medical Investigator and Ross E. Zumwalt's Motions to Dismiss* [Doc. 39] and the Court's
*sua sponte* inquiry as to whether this action should be remanded to state court based on a
lack of subject-matter jurisdiction.  Having considered the parties' submissions, the relevant
law, and otherwise being fully advised in the premises, the Court grants the motion to

dismiss Defendants New Mexico Office of Medical Investigator (NMOMI) and Ross E. Zumwalt, M.D. and directs the parties to show cause in writing by no later than May 19, 2006, why Plaintiffs should not be denied leave to amend their pleading and why this action should not be remanded to state court.

## I.    <u>BACKGROUND</u>

On May 10, 2005, Plaintiffs filed a civil action in the Second Judicial District Court for the County of Bernalillo, State of New Mexico asserting various claims against Defendants NMOMI, Zumwalt, Aspen Funeral Alternatives, and French Mortuary, Inc., based on the fact that the decedent, Antonio Torres, was buried without a leg that had been severed during the motorcycle accident which caused his death.  According to Plaintiffs, the the negligence of one or more of the Defendants caused the decedent's severed leg to be lost or misplaced at some point between its recovery at the accident scene and the decedent's burial.

On June 1, 2005, Defendants NMOMI and Zumwalt removed the action to the United States District Court for the District of New Mexico based on the presence of federal civil-rights claims against Defendant Zumwalt in his official capacity for violation of due process and burdening the exercise of religious freedom.  [Doc. 1.]  After the action was removed, Plaintiffs filed a *First Amended Complaint* [Doc. 22] naming New Mexico Donor Services and DCI Donor Services, Inc. as additional Defendants.

On February 23, 2006, Defendants NMOMI and Zumwalt filed a motion to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b) on the grounds that Plaintiffs' federal civil-

rights claims are not viable and that there is no waiver of sovereign immunity for Plaintiffs'

state-law claims under the New Mexico Tort Claims Act (NMTCA), N.M. Stat. Ann. § 41-4-

1 to 1-4-27 (Michie 2004).  [Doc. 39.]  In response to the motion to dismiss filed by these

Defendants, Plaintiffs stipulate to the dismissal of their federal civil-rights claims for

injunctive relief against Defendant Zumwalt in his official capacity, but they seek to amend

their pleading to allege a federal civil-rights claim for damages against Defendant Zumwalt

in his individual capacity.  Plaintiffs also assert that Section 41-4-6 of the NMTCA, N.M.

Stat. Ann. § 41-4-6, waives sovereign immunity with respect to their state-law claims against

Defendants NMOMI and Zumwalt.  [Doc. 42.]

## II.    ANALYSIS

### A.    Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for failure to state

a claim upon which relief may be granted at any time.  See Fed. R. Civ. P. 12(h)(2).

Dismissal on these grounds may occur *sua sponte* or upon a defendant's motion.  See Curley

v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) (concluding that "sua sponte dismissal of a

meritless complaint that cannot be salvaged by amendment comports with due process and

does not infringe the right of access to the courts").  When requested in a defendant's

motion, dismissal under this rule is appropriate only if "'it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"

GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997)

(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  *Sua sponte* dismissal in this context

is only appropriate when it is patently obvious that the plaintiff cannot prevail on the facts alleged, and allowing an opportunity to amend would be futile.  See Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir.1991); Curley, 246 F.3d at 1284.

"The court's  function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).  Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.  "In addition to the complaint, the [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  Although Plaintiffs' pleadings are to be liberally construed, mere conclusory allegations without supporting factual averments will not suffice. See Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).

A different standard applies when a jurisdictional defect provides the grounds for dismissal.  Motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "generally take one of two forms:  (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir.2002).  In reviewing a facial attack, the Court construes Plaintiff's pleading liberally, accepts all uncontroverted, well-pleaded factual allegations as true, and views all

reasonable inferences in Plaintiff's favor.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  "In reviewing a  factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts,'" and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion. Id. (quoting Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995)).  Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

**B.    Plaintiffs' State-Law Claims Against Defendants NMOMI and Zumwalt**

Plaintiffs' *First Amended Complaint* [Doc. 22] asserts the following state-law claims against Defendants NMOMI and/or Zumwalt in his official capacity:  (1) negligent handling of remains, (2) negligence *per se* in handling of remains, (3) outrage or indignity to body of deceased, and (4) intentional or negligent infliction of emotional distress.  In their motion to dismiss, Defendants NMOMI and Zumwalt assert that all of these state-law claims are not viable because the NMTCA does not waive sovereign immunity in this context.  In support of this assertion, these Defendants cite opinions from New Mexico's appellate courts which have rejected similar claims against the NMOMI and its employees that rely on a waiver of sovereign immunity under the NMTCA's exceptions for medical facilities, N.M. Stat. Ann. § 41-9, health-care providers, id. § 41-4-10, and law-enforcement officers, id. § 41-4-12. See Begay v. State, 104 N.M. 483, 487, 723 P.2d 252, 256 (Ct. App. 1985), rev'd in part on

other grounds sub nom., Smialek v. Begay, 104 N.M. 375, 377, 721 P.2d 1306, 1308 (1986);

Dunn v. McFeeley, 1999-NMCA-084, ¶¶ 24-25, 127 N.M. 513, 984 P.2d 760.

In response, Plaintiffs do not cite any contrary authority indicating that a waiver is proper under the specific provisions of the NMTCA cited above.  Instead, Plaintiffs assert that Defendants NMOMI and Zumwalt have waived sovereign immunity under another provision of the NMTCA pertaining to "liability for damages caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  N.M. Stat. Ann. § 41-4-6.  Plaintiffs point out that New Mexico's appellate courts have not restricted the waiver of liability under this section to claims arising solely from physical defects in a public building or its contents.  See Leithead v. City of Santa Fe, 1997-NMCA-041, ¶ 5, 123 N.M. 353, 940 P.2d 459.  Rather, this waiver also may apply to certain acts or omissions which create an unsafe or dangerous condition on the property or its surroundings that poses a risk to the general public.  See id.  Where a such a dangerous condition is alleged, "the critical question is whether the condition creates a potential risk to the general public." Espinoza v. Town of Taos, 120 N.M. 680, 683, 905 P.2d 718, 721 (1995).

The operational or maintenance activities which may fall under Section 41-4-6 include controlling ingress and egress to public buildings and grounds in a manner that allows vicious dogs, violent gang members, or improperly trained security guards to roam the premises and thereby pose a risk of injury to the general population occupying or visiting those premises.  See, e.g., Castillo v. County of Santa Fe, 107 N.M. 204, 207, 755 P.2d 48,

51 (1988) (vicious dog roaming grounds of public housing project); <u>Callaway v. New Mexico Dept. of Corrections</u>, 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct. App. 1994) (violent gang members in state correctional facilities); <u>Baca v. State</u>, 1996-NMCA-021, ¶ 10, 121 N.M. 395, 911 P.2d 1199 (improperly trained security guards on state-fair grounds). The waiver of immunity under Section 41-4-6 also may extend to situations where a physical feature of the premises poses a risk of injury to the general public if left unguarded, as in the case of swimming pools frequented by children.  <u>See, e.g.</u>, <u>Leithead</u>, 1997-NMCA-041, ¶ 16; <u>Seal v. Carlsbad Indep. Sch. Dist.</u>, 116 N.M. 101, 105, 860 P.2d 743, 747 (1993).

On the other hand, Defendants NMOMI and Zumwalt point out that the waiver of immunity in Section 41-4-6 of the NMTCA is not construed so broadly as to encompass any negligent act or omission that happens to occur within or near a building, public park, or piece of machinery, equipment, or furnishings associated with the State.  Such a broad construction would violate the principle that  "[s]tatutory provisions purporting to waive governmental immunity are strictly construed." <u>Rutherford v. Chaves County</u>, 2003-NMSC-010, ¶ 11, 133 N.M. 756, 69 P.3d 1199.

Thus, for example, the waiver of immunity under Section 41-4-6 does not apply to negligence that arose from the duty to supervise children in a day-camp undertaking, rather than a duty to remedy a danger to the general public posed by the physical condition of the premises on which the day camp was operated.  <u>See</u> <u>Espinoza</u>, 120 N.M. at 684, 905 P.2d at 722.  Section 41-4-6 also does not apply where the State undertakes a duty to monitor a family's treatment of children within a home, <u>see</u> <u>Johnson v. Holmes</u>, 377 F. Supp. 2d 1069,

-7-

1078-81 (D.N.M. 2004), rather than a duty to ensure that the housing provided to the family is safe from physical defects, see Cobos v. Dona Ana County Housing Auth., 1998-NMSC-049, ¶ 20, 126 N.M. 418, 970 P.2d 1143.  Similarly, there is no waiver of immunity under this section of the NMTCA where the negligence attributed to the State arose from a duty to supervise schoolchildren's interaction with one another, see Pemberton v. Cordova, 105 N.M. 476, 478, 734 P.2d 254, 256 (Ct. App. 1987), as opposed to a danger to the public posed by operation or maintenance of the school building itself, see Williams v. Central Consol. Sch. Dist., 1998-NMCA-006, ¶ 17, 124 N.M. 488, 952 P.2d 978.

While the authorities cited above illustrate that the applicability of Section 41-4-6 may turn on "exceedingly fine" distinctions, Baca, 1996-NMCA-021, ¶12, I agree with Defendants that this provision of the NMTCA does not provide a waiver of immunity for the claims asserted in this case.  The statutory and common-law duties on which Plaintiffs' state-law claims are premised all concern the handling of a decedent's remains and effects, rather than the operation or maintenance of a building, public park, or the machinery, equipment, or furnishings therein.  As such, they are more analogous to the duties at issue in Espinoza, 120 N.M. at 684, 905 P.2d at 722, and Johnson, 377 F. Supp. 2d at 1078-81, where Section 41-4-6 did not provide a waiver of immunity.

In this regard, I note that the *First Amended Complaint* does not allege that Defendants NMOMI or Zumwalt were involved in any activities at the fatal accident scene or at the site of the funeral services and burial.  Plaintiffs are not claiming that the missing leg became severed from the rest of the decedent's body due to some physical defect or

dangerous condition in a structure operated or maintained by Defendants NMOMI or Zumwalt. Similarly, they are not accused of leaving the decedent's body or the missing leg exposed to family members in an undignified or distressing manner at the funeral services or burial site.

Instead, the *First Amended Complaint* asserts that the missing leg was already severed as a result of the motorcycle accident that occurred before these Defendants ever became involved in the case. [Doc. 22, at 2.] The only actions attributed to Defendants NMOMI and Zumwalt are that they were involved in performing an examination of both the severed leg and the rest of the body for purposes of investigating the death of the decedent, and then inexplicably "failed to release the severed limb" when instructed to release the body for burial. [Doc. 22, at 2-3.]

These allegations lack the required nexus to the operation or maintenance of a "building, public park, machinery, equipment or furnishings." N.M. Stat. Ann. § 41-4-6. They also fail to identify how the loss of the decedent's leg arose from a condition within or near the premises of Defendants NMOMI or Zumwalt that poses any specific risk to the general public. The legal duties which form the basis for Plaintiffs' state-law claims all concern the care and custody of the decedent's remains and effects, rather than the operation or maintenance of the structures or objects listed in Section 41-4-6. Therefore, the waiver of immunity provided in that section of the NMTCA does not apply in this case, and Plaintiffs state-law claims against Defendants NMOMI and Zumwalt must be dismissed.

C.    **Plaintiffs' Federal Civil-Rights Claims**

In addition to the state-law claims discussed above, the *First Amended Complaint* alleges that Defendant Zumwalt deprived the Plaintiff[1] of her federal civil rights "not to be deprived of property without due process of law (insofar as Plaintiff's rights in the body are recognized property rights)" and "to practice her religion (insofar as her faith mandates honor to the bodies of the deceased, recommends burial of the body, and encourages remembrance of the deceased at the site of such burial)."  [Doc. 22, at 5.]  Without specifying how it relates to these federal civil-rights claims, Plaintiffs' pleading also asserts that Defendant Zumwalt "has failed to adequately respond to requests for information on the disposition" of the decedent's missing leg.  [Doc. 22, at 5.]  Suing Zumwalt in his official capacity, Plaintiff seeks only injunctive relief on these federal civil-rights claims.  Specifically, she requests that the Court enjoin further violations of her civil rights, and that Defendant Zumwalt be ordered to disclose all information and release all records pertaining to the disposition of the decedent's missing leg.  [Doc. 22, at 5.]

In support of the motion to dismiss these federal civil-rights claims, Defendant Zumwalt asserts that the documents in question already have been produced and, therefore, Plaintiffs' request for an injunction regarding such documents is moot.  Defendant Zumwalt further asserts that there is no other basis for injunctive relief on these claims, because

---

[1]Although a number of family members are named as Plaintiffs in the caption of the *First Amended Complaint*, the federal civil-rights claims appear to be asserted by Plaintiff Lupe Torres only, insofar as she is the only family member who has standing to pursue such claims.  See Smialek, 104 N.M. at 377, 721 P.2d at 1308.

-10-

Plaintiff has an adequate remedy in the form of a suit for damages if any specific violations occur in the future, and because it would be superfluous to issue an injunction requiring that Defendants obey the law in general terms when they already are required to obey the law without such an injunction.

In response to these arguments, Plaintiff has stipulated to the dismissal of her federal civil-rights claims for injunctive relief against Defendant Zumwalt in his official capacity. [Doc. 42.]  Plaintiff also asserts that she wishes to amend her pleading to assert a federal civil-rights claim against Defendant Zumwalt in his individual capacity; however, no motion to amend Plaintiffs' pleading in this manner is currently pending. See D.N.M. LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend.").

The Court is not persuaded that an amendment to Plaintiffs' pleading should be permitted at this juncture for the following reasons.  First, I question whether such an amendment would accord with the case-management deadlines that have been previously established in this case, because a new claim asserted against Defendant Zumwalt in his individual capacity under 42 U.S.C. § 1983 is likely to require another round of briefing on a qualified-immunity defense before discovery could proceed on this claim.  See Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992).

A motion for leave to the amend a pleading at a time that conflicts with established case-management deadlines is governed by the good-cause standard articulated in Fed. R. Civ. P. 16(b) and D.N.M. LR-Civ. P. 16.1, rather than the more lenient standard articulated in Fed. R. Civ. P. 15.  See Rowen v. State of N.M., 210 F.R.D. 250, 252 (D.N.M. 2002)

(collecting cases).  Fed. R. Civ. P. 16(b) authorizes district courts to issue scheduling orders that limit "the time . . . to join other parties and to amend the pleadings."  In the District of New Mexico, such orders may take the form of an *Initial Pretrial Report* [Doc. No. 20] filed pursuant to D.N.M. LR-Civ. 16.1.  Under these rules, pleadings that may entail modification of the deadlines contained in the *Initial Pretrial Report* or in other scheduling orders requires a showing of good cause and Court approval.  See Fed. R. Civ. P. 16(b); D.N.M. LR-Civ. 16.1; Rowen, 210 F.R.D. at 252.

"'The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements.'"  Rowen, 210 F.R.D. at 252 (quoting Bradford v. Dana Corp., 249 F.3d 807, 809 (8th Cir. 2001)).  Under this standard, "the Court may grant leave to modify the pretrial schedule and amend the complaint under Rule 16(b) only if the schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'"  Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir.1992)).  Prejudice to the adverse party is also a factor to be considered.  See Leary v. Daeschner, 349 F.3d 888, 907-08 (6th Cir. 2003).

I question whether Plaintiff can meet this standard because it would be difficult to conclude that she has shown diligence in attempting to timely amend her pleading when several weeks have passed since this possibility was first raised and yet no motion to amend meeting the requirements of D.N.M. LR-Civ. 15.1 has been filed during that period.  Under similar circumstances, the Tenth Circuit has recognized that:

"A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.   Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.'   [Citation omitted.]   ... Much of the value of summary judgment procedure in the cases for which it is  appropriate ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back along thereafter and fight on the basis of some other theory."

Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting Freeman v. Continental Gin Co., 381 F.2d 459, 469-70 (5th Cir.1967)).

Further, Defendant Zumwalt may be unduly prejudiced by the timing of the proposed amendment insofar as it would assert a new claim under 42 U.S.C. § 1983 to which this Defendant is entitled to raise the defense of qualified immunity.  "[Q]ualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation."  Workman, 958 F.2d at 336 (citing Siegert v. Gilley, 500 U.S. 226 (1991)). Accordingly, dispositive motions relating to the defense of qualified immunity should be addressed early in the litigation, and a party asserting qualified immunity generally should not be subjected to discovery or trial unless and until the Court rules that this defense does not apply.  See id.

The need for a prompt ruling on the defense of qualified immunity further underscores the importance of requiring the timely assertion of any amendments to pleadings that implicate this defense.  The Court cannot countenance the practice of strategically withholding federal civil-rights claims against an individual Defendant until late in the litigation, when such a Defendant is effectively "sandbagged" in a manner that may unfairly

deprive him or her of the defense of qualified immunity until trial.  See, e.g., Chavez v. City of Albuquerque, 402 F.3d 1039, 1042-46 (10th Cir. 2005).

Apart from these considerations about the effect of the proposed amendment on existing case-management deadlines, it appears that the proposed amendment at issue here does not satisfy the more liberal standard for amending a pleading articulated in Rule 15(a). Because responsive pleadings already have been served [Doc. 2, 4, 26], such an amendment requires leave of the Court or written consent of the adverse party.  See Fed. R. Civ. P. 15(a). Defendant Zumwalt's reply brief [Doc. 44] does not provide such consent, and it is within the Court's discretion to deny leave to amend a pleading under Fed. R. Civ. P. 15(a) based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal" for any reason.  Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999).  Thus, an amendment is futile if the resulting pleading would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), i.e., if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  GFF Corp., 130 F.3d at 1384 (quoting Conley, 355 U.S. at 45-46).  An amendment is also futile of it can be

-14-

determined on the basis of undisputed material facts that the resulting pleading would not survive a motion for summary judgment under Fed. R. Civ. P. 56.  See Watson v. Beckel, 242 F.3d 1237, 1239-40 (10th Cir. 1997).  Finally, an amendment is futile if the Court would lack jurisdiction to hear it, see Hutchinson v. Pfeil, 211 F.3d 515, 523 (10th Cir. 2000), under the standard of review articulated in Stuart, 271 F.3d at 1225.

Here it is questionable whether Plaintiff could assert a viable due-process claim under the Fourteenth Amendment.  The Supreme Court has repeatedly emphasized that "the Fourteenth Amendment is not a 'font of tort law to be superimposed on whatever systems may already be administered by the States,'" and that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  County of Sacramento v. Lewis, 523 U.S. 833, 848-49 (1998) (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)).

Further, insofar as the loss of the decedent's severed leg was an unplanned, unauthorized occurrence rather than a deliberate, intentional act, a procedural due-process claim against Defendant Zumwalt in his individual capacity would appear to be futile.  In the absence of an allegation that Defendant Zumwalt was in a position to predict when such unplanned and unauthorized losses would occur, the "very nature of the deprivation ma[kes] predeprivation process impossible."  Zinermon v. Burch, 494 U.S. 113, 137 (1990); see Brown v. Muhlenberg Township, 269 F.3d 205, 213 (3d Cir. 2001).

Similarly, a federal civil-rights claim based on the concept of religious freedom also appears to be futile in this context.  In addition to the limitations on standing noted in

Smialek, 104 N.M. at 377, 721 P.2d at 1308, the Tenth Circuit has explained that religious-freedom claims generally must meet three "threshold requirements:  the government action must 1) substantially burden 2) a religious belief rather than a philosophy or way of life, 3) which belief is sincerely held by the plaintiff."  Thiry v. Carlson, 78 F.3d 1491, 1494 (10th Cir. 1996).  "[T]he incidental effects of otherwise lawful government programs 'which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs' do not constitute substantial burdens on the exercise of religion."  Id. at 1495 (quoting Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450-51 (1988)).  Thus, while the fact that the decedent was buried without his severed leg may be extremely distressing to Plaintiffs in light of their religious beliefs, such distress alone is insufficient to prove a religious-freedom claim where it is an incidental, unintended effect of the Defendant's actions that does not coerce Plaintiffs to act contrary to an important tenet of their religion.  See id. at 1495-96.

Finally, to the extent that Plaintiffs propose to assert such federal civil-rights claims against Defendant Zumwalt in his individual capacity, they also must be prepared to show that he "personally participated in" the alleged deprivation of their federal civil rights by means of "'a deliberate, intentional act.'"  Jenkins v. Wood, 81 F.3d 988, 994-95 (10th Cir. 1996) (quoting Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992)).  "Supervisor status by itself is insufficient to support liability" under this statute.  Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996) (citing Rizzo v. Goode, 423 U.S. 362 (1976)).  To establish supervisory liability under 42 U.S.C. § 1983, Plaintiffs must be

prepared to "show that an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  Green v. Branson, 108 F.3d 1296, 1302 (10th Cir.1997) (internal quotation marks omitted).  It is not enough to show that a supervisor "should have known" that the alleged deprivation was occurring and failed to stop it, Woodward, 977 F.2d at 1399, because "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence," Green, 108 F.3d at 1302.

In light of these concerns, I will order the parties to show cause in writing by no later than May 19, 2006, why leave to amend Plaintiffs' pleading should not be denied and why the remaining claims should not be remanded to state court.  Remand appears to be the appropriate course of action at this juncture because there is  no longer any federal question on which to support this Court's exercise of subject-matter jurisdiction, insofar as Plaintiffs have stipulated to the dismissal of their existing federal civil-rights claims against Defendant Zumwalt in his official capacity and have not shown good cause for granting leave to amend their pleading with a federal civil-rights claim against this Defendant in his individual capacity.  There is also no allegation or evidence that the parties' citizenship is diverse.

Thus, any remaining claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Having dismissed all of Plaintiffs' interrelated claims against Defendants NMOMI and

Zumwalt, there does not appear to be cause for this Court to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims against the other Defendants. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).

## III.   CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss Plaintiffs' claims against Defendants NMOMI and Zumwalt and orders the parties to show cause in writing by no later than May 19, 2006, why leave to amend Plaintiffs' pleading should not be denied and why the remaining claims should not be remanded to the Second Judicial District Court for the County of Bernalillo, State of New Mexico.

**IT IS, THEREFORE, ORDERED** that *Defendants New Mexico Office of the Medical Investigator and Ross E. Zumwalt's Motions to Dismiss* [Doc. 39] is **GRANTED** and all of Plaintiffs' claims against Defendants NMOMI and Zumwalt are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties are directed to show cause in writing by no later than May 19, 2006, why leave to amend Plaintiffs' pleading should not be denied and why the remaining claims should not be remanded to the Second Judicial District Court for the County of Bernalillo, State of New Mexico.

**SO ORDERED** this 5th day of May, 2006, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**

-18-